UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                    CASE NO. 03-19850

ANDRE AND SUSAN PAILLE                                              SECTION "B"

    DEBTORS                                                                   CHAPTER 7
******************************************************************
MARY AND CRAIG DUFRENE, JR
    PLAINTIFFS

VERSUS                                                                                ADV.P. NO. 04-1221

ANDRE AND SUSAN PAILLE
    DEFENDANTS

## MEMORANDUM OPINION

This matter was tried on February 5, 2009 on the complaint of Mary Dufrene and Craig Dufrene, Jr. against Susan Burkhalter Paille objecting under 11 U.S.C. § 523(a)(6) to the dischargeability of a debt related to the death, on August 12, 2003, of the Dufrene's infant son, Dawson Dufrene. Because the court finds that the death was not caused by willful and malicious injury as required by 11 U.S.C. § 523(a)(6), the court finds that any debt incurred by Paille to the Dufrenes in connection with their suit for wrongful death is dischargeable.

**I.**     **Background Facts**

The basic facts are not really in dispute. Susan Paille ("Paille") ran a small unlicensed daycare from her home. She testified that she was certified in child CPR and that she took three classes a year on child safety and nutrition provided by the Louisiana

Office of Nutritional Assistance.  She further testified that she had been caring for children from her home for approximately 17 years without any of the children having sustained serious injury or death.  The Dufrenes' son Dawson, who was approximately five months old at the time of his death, was one of the six children that Paille cared for on a regular basis.  On August 12, 2003, the Dufrenes left Dawson at Paille's home about 7:30 a.m.  Sometime between 8:30 and 9:00 a.m., Paille put Dawson in a playpen to take a nap in a bedroom on the first floor of her home.  She also put a soft, quilted comforter in the playpen to cover Dawson while he slept.  Paille did not check on Dawson again until sometime between 12:00 and 12:30 p.m.  When she did check on him, she found Dawson unconscious, in the corner of the playpen with the comforter over his head.  Paille began performing CPR on Dawson and when unable to resuscitate him, instructed her 14 year old son to call 911.  Firemen who arrived first in response to the 911 call took over the resuscitation efforts but were equally unsuccessful.  When the paramedics arrived, they took Dawson to the hospital where it was determined that he had died.  The coroner's report stated that Dawson died from asphyxia due to suffocation.[1]

## II. Procedural Posture

The Dufrenes filed a suit against Paille in the 22nd Judicial District Court for the State of Louisiana seeking damages for the wrongful death of their son Dawson.  That suit was the basis for the adversary complaint filed under §523(a)(6) and § 727 of the

---

[1] Exhibit 26.

Bankruptcy Code against Paille and her husband and co-debtor Andre Paille. On the motion of the Dufrenes, an order completely dismissing the adversary complaint as to Andre Paille and dismissing the § 727 complaint as to Susan Paille was entered on June 13, 2005. The parties elected to proceed in state court with the suit for damages so this remaining action against debtor Susan Paille was dormant for several years. No final judgment has been reached in the state court lawsuit.

Paille was also charged in state court with negligent homicide and convicted by a jury. Prior to sentencing, on a motion for new trial, Paille's defense showed that the state failed to relay certain information to the defense that prohibited Paille from receiving a fair trial.[2] Paille's motion for new trial was granted. When the district attorney's office resubmitted the case to the grand jury with the additional evidence, the grand jury returned a "no true bill," and the criminal matter was dropped.

### III.  Legal Analysis

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is not dischargeable.[3] Because the aim of the Bankruptcy Code is to give debtors a fresh start, discharge exceptions should be narrowly construed in favor of the debtor.[4] Therefore, the party asserting that a debt is

---

[2] Exhibit 34-1. Transcript at p. 29.

[3] 11 U.S.C. § 523(a)(6).

[4] *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998).

nondischargeable must prove its claim by a preponderance of the evidence.[5]

The United States Supreme Court has held that an injury is willful, causing nondischargeability, where there is, "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[6] The United States Court of Appeal for the Fifth Circuit has held that an injury is willful and malicious where the debtor had either an objective substantial certainty of causing harm or a subjective motive to cause harm to the injured party.[7] Simply put, a willful and malicious injury results from an act performed with the intent to cause injury, not from an act performed intentionally that results in injury.[8] Willfulness does not encompass negligence or recklessness.[9]

Here, there was no evidence that there was a subjective motive to cause harm.[10] The parties both agree that Paille did not intend to injure Dawson or cause his death. Thus, the court must examine whether Paille's acts evidence an objective substantial certainty of causing harm. At trial the plaintiffs' expert witness, Dr. Wallace, testified that in his opinion an infant between three and six months should never be left out of

---

[5] *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

[6] *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

[7] *In re Miller*, 156 F.3d 598, 606 (5th Cir. 1998).

[8] *State of Tex. By and Through Bd. of Regents of University of Texas System v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998); *Matter of Delaney*, 97 F.3d 800, 803 (5th Cir. 1996).

[9] *Miller*, 156 F.3d at 603.

[10] The debtor's unequivocal testimony that she did not intend to harm Dawson - that she loved him - was unchallenged.

sight and hearing and should never be left unattended for 3 ½ to 4 hours. He also testified that it was not appropriate to leave an infant Dawson's age in a playpen with a fluffy covering such as the one in this case. Finally, Dr. Wallace testified that in his opinion, the situation at the Paille home was inappropriate and potentially harmful, and that if he had been notified of a child being left in a situation like that, he would have notified the office of child services about it. In contrast, the debtor relied for her defense on the transcript of the expert testimony of Dr. Benton from the state court criminal trial.[11] Dr. Benton testified that he did not think that leaving Dawson to sleep unattended in the playpen was an inappropriate or necessarily negligent act.[12]

Weighing the testimony of both experts, the court finds that Paille's actions were not such that they rose to the level of an objective substantial certainty of causing harm. Objective substantial certainty requires that from a third party's point of view, the actions were at least substantially certain to cause harm. Although the daycare Paille ran out of her house may not have been ideal, and the death of Dawson Dufrene is certainly very tragic and sad, the court cannot find on the evidence here that there was a substantial certainty of causing harm. The experts disagreed as to whether Paille's actions were appropriate, and if reasonable minds can differ as to the certainty of causing harm, then the test is not met.

---

[11] Exhibit 34-1. The parties stipulated that the testimony from the criminal trial was admitted in evidence in this trial.

[12] Exhibit 34-1. Transcript at p. 18.

## IV.     Conclusion

For the above stated reasons, the court finds that there was no willful and malicious injury that would prevent the discharge of debt under § 523(a)(6) of the Bankruptcy Code.

New Orleans, Louisiana, September 25, 2009.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge